July, 1830.

Smith
v.
Allen et al.

---

## Executor of Simmons v. Vandegrift et al.

After a judgment is satisfied, the sheriff has no authority to sell, and his deed can convey no interest to the purchaser.

The legal process of execution in the hands of the sheriff is not affected, or the title of a purchaser at the sheriff's sale impaired, by an attachment issued against the plaintiff in the execution, and levied on the money in the hands of the defendant, after the execution levied, and before the sale.

Mere inadequacy of price, without fraud or collusion, is not sufficient to set aside a purchase at sheriff's sale.

A mortgage given for purchase money on a sale of land, by one defendant in execution to his co-defendant, is not, on the principle of *lien for purchase money*, entitled to priority over the antecedent judgment against both, nor can it affect the title of a purchaser under the judgment, although the property was levied on and sold *as the property of the mortgagor.*

Irregularity in the sheriff selling lands before goods, without a written request from the defendant, cannot affect the title of a purchaser at the sheriff's sale.

THE bill charges, that in May, 1816, John Vandegrift mortgaged the premises in question, a lot of about six acres, to Richard Edsall, junior, for $1300. That this mortgage was given for the purchase money on a sale of the premises by Edsall to Vandegrift : and that Edsall, on the 4th of November, 1816, assigned the mortgage to Henry Simmons, of whose will the complainant

is executor. That in May, 1813, Robert Morris, as administrator of the Earl of Perth, obtained a judgment against Edsall, under which his property was sold, and purchased by Robert Boggs, who claims title to the premises in controversy. That in February, 1816, Smith and Loring obtained a judgment in the common pleas of Sussex, against the said Richard Edsall, junior, Richard Edsall, senior, and John Vandegrift. In November, 1816, Kinney and Fairchild obtained a judgment in the same court against —— Seward and John Vandegrift : and in August, 1817, Daniel Borden obtained a judgment in the same court against the same defendants. That by virtue of these last executions, Daniel Swayze, esq., sheriff of Sussex, levied on the mortgaged premises as the property of Vandegrift, and in January, 1819, sold the same to William Darrah for eighty-five dollars, and afterwards conveyed the property to the purchaser. The bill farther charges, that Darrah, the purchaser, knew of the mortgage outstanding : that the property was sold for a price grossly inadequate, being worth from twelve to fourteen hundred dollars : that the judgments were satisfied at the time of sale, and that fact known to the purchaser ; and therefore, that the sale was fraudulent, and void. The prayer of the bill is, that the deed from sheriff Swayze to Darrah may be declared void, on the ground that the sale was fraudulent, and under a satisfied judgment ; and that the equity of redemption in the mortgaged premises may be foreclosed, and the premises sold to satisfy the complainant's mortgage. Vandegrift, the mortgagor and defendant in the executions, Robert Boggs and William Darrah, purchasers, Daniel Swayze, the sheriff, and Jacob Wilson, his under sheriff, are made defendants.

William Darrah, (the real defendant,) in his answer, admits the complainant's mortgage; that he purchased the property for eighty-five dollars, and received a deed ; and that he had notice of the complainant's mortgage : but expressly denies all fraud, as well as all knowledge that the judgment of Smith and Loring v. Vandegrift et al. was satisfied. He also denies that the said judgment was satisfied at the time of the sale, and insists that by purchasing under that judgment, which was prior to the complainant's mortgage, he intended to acquire, and has acquired, a title paramount to the mortgage.

*Ph. Dickerson,* for the complainant, said there was no con-
troversy as to the existence and fairness of the mortgage: the
only question arose upon the title set up by the defendant, Dar-
rah. And he insisted that the sale by the sheriff to Darrah was
fraudulent, because it was made for a sum grossly inadequate,
and Darrah purchased knowing of the complainant's mortgage.
That the sale was unauthorized, as the sheriff had levied on per-
sonal property sufficient to satisfy the execution, and there was no
request by the defendants that the land should be first sold. That
a sale of the lands before the goods, in such case, was fraudulent,
as against third persons, whose interests were affected by it, and
the conveyance ought to be set aside. That the mortgage was
given for purchase money, on the sale of the premises, by Van-
degrift to Edsall, and as such was a lien on the property, entitled
to priority over an antecedent judgment, by the common law, of
which our statute was declaratory. That the property was levied
on and sold *as the property of Vandegrift;* and Darrah had
only purchased Vandegrift's right, which was subject to the lien
of the mortgage. That the sale by the sheriff was void as against
the mortgagee, because the judgment of Smith and Loring, (the
only one prior to the mortgage,) was satisfied before the sale: for
proof of which, he referred to some parol evidence taken in the
cause, and relied on the fact, that Dr. Fowler had taken out an
attachment against Smith and Loring, the execution creditors,
and attached the money in the hands of Vandegrift, the defendant,
before the sale by the sheriff on the execution. This, he insist-
ed, superseded the execution; and the money, if any due on it,
ought to have been collected by the plaintiff in attachment. He
cited the following authorities: 10 *John. R.* 457; 1 *John. C. R.*
402; 4 *John. C. R.* 118, 255; 15 *John. R.* 458; *Rev. L.* 356,
671, 749.

*Hornblower* and *Vanarsdale,* for the defendant, Darrah, said,
as there was no decree prayed against Swayze and Wilson, the
bill as against them must be dismissed. And they contended,
that the legal title acquired by Darrah, could only be impeached
by *fraud.* That all fraud was denied by the answer; and there
was no evidence to sustain the charge. That Simmons took the
mortgage with equitable notice of the judgment. That Darrah,

8

with full knowledge of the mortgage outstanding, might lawfully purchase, and acquire a paramount title under the prior judgment, without being subject to the imputation of fraud. That the doubt which appeared to have existed as to the title to the premises, was sufficient to account for the property having sold at so low a price; and if not, that mere inadequacy of price, without fraud, was not sufficient to avoid a sheriff's sale. That any irregularity, in not selling the goods before the land, was a question between the sheriff and defendant only; and could not affect the title of a bona fide purchaser of the lands at the sheriff's sale. That this matter was not charged in the bill; and there was some evidence, also, of a request to sell the land. That a mere levy on goods was no satisfaction of the execution, unless they were sufficient, and were actually taken from the defendant by the sheriff: without this the sheriff was accountable only for the nominal amount of his levy. That as to the mortgage being a lien for purchase money, the principle did not apply to this case, as the judgment and execution was against both mortgagor and mortgagee. That there was no evidence that the attachment at the suit of Fowler, was levied on the particular monies due on this execution; and if it was, money in the custody of the law could not be attached. The attachment could not arrest the proceedings of the sheriff on the execution. That there was no evidence of the judgment having been satisfied before the sale; and if it had, Darrah had no notice of it. That he was a purchaser for a valuable consideration, and entitled to the protection of the court. They referred to, 11 *John. R.* 517, 555; 7 *Ves. jr.* 34; 16 *John. R.* 127; *Cox N. J. R.* 39; 2 *Atk.* 275; 2 *Ves. jr.* 454.

*Dickerson* replied, that no person, even without notice, could acquire title under a sheriff's sale, made upon a satisfied judgment.

THE CHANCELLOR. The first question that presents itself, is, whether the judgment was satisfied: if it was, the sheriff had no authority to sell, and the deed could convey no interest to the purchaser. I have no difficulty in saying, that the testimony of the complainant has not satisfied me, that at the

time of the sale the judgment of Smith and Loring was paid. The alleged statements of Wilson, the deputy sheriff, to Joseph Edsall, are contradicted by Wilson himself. Wilson declares that he never said to Edsall that the judgment was arranged or paid off, and that the fact was not so, but that at the time of the sale there was a balance due on the execution. The statement of Vandegrift to the same witness, made after the sale of the property, that the execution was paid, if to be received as evidence at all, is not entitled to much weight. The testimony of Mr. Ryerson, the attorney on record, is greatly to be relied on. He states, that according to his calculation, there was a balance due on the 7th January, 1819, (the time of the sale,) of $71 50, over and above sheriff's execution fees. He states further, that he called on Wilson to collect and pay over the balance, before the sale. And Wilson refers to the same statement, as having been received and acted on by him.

Some reliance was placed by the defendants' counsel on the fact, that an attachment was taken out before the sale, by Samuel Fowler, against Smith and Loring, viz. in 1817; and that the sum of forty dollars was attached in the hands of John Vandegrift, and fifty-two dollars and fifty cents in the hands of Thos. C. Ryerson, Esq.: and it was argued, that if this balance was attached, the sheriff could not go on and sell under the execution. But is it certain that this money, thus attached in the hands of Vandegrift, was the money due on the execution? If it was, did the issuing of the attachment, and the subsequent levy, pay the judgment, so as to affect the title of an innocent purchaser? I think not. The legal process of execution, in the hands of the sheriff, could not be affected by the suing out of the subsequent attachment; much less could the title acquired under it be impaired.

But it is insisted on the part of the complainant, that the purchase was for a nominal consideration; and that the purchaser knew, at the time, of the outstanding incumbrance in favour of the complainant. The defendant, Darrah, admits in his answer, that he knew of the outstanding mortgage; and alleges, that he purchased with the express intention of acquiring a prior right. This he had a right to do; and without giving notice of such intention to the mortgage creditor. Such creditor might have purchased in

the judgment at any time ; or, if that had been refused, he might, on payment of the money, have compelled an assignment of it for his own security, and thereby prevented the possibility of any danger arising from a sale under a judgment prior to his mortgage. It is quite probable, from the evidence, that the property was purchased by Darrah for less than its real value : but the sale was open, fair, and bona fide. There does not appear to have been any fraud or collusion between the purchaser and the sheriff, or any other person ; and under such circumstances, a mere inadequacy of price, would not justify this court in setting aside the sale and subsequent conveyance.

The cases cited by complainant's counsel—1 *John. C. R.* 402, and 4 *John. C. R.* 118—are not applicable. The one was a case of gross fraud and imposition, and the court granted relief, even against a judgment. In the other, the purchase was made for a consideration perfectly nominal, on a stormy day, and when no persons were present but the sheriff and the purchaser : yet even in that case the sale was not set aside on the ground of fraud, but the purchaser was decreed to hold the property in trust for the benefit of all parties interested in it.

But what is the fact in relation to the alleged inadequacy of price ? One witness says the property was worth, at the time of sale, about eight hundred or nine hundred dollars. Mr. Ryerson considers the property worth at that time about eight hundred dollars, if an indisputable title could have been made. In relation to the title, he says, it was known that the property had recently been surveyed by Joseph Sharp as vacant land, and was then claimed by him or those holding under him. It was also publicly known that the homestead farm of Richard Edsall had formerly been sold at sheriff's sale, and purchased by Robert Boggs, and the lot in question was supposed to be included in that sale. The witness bid on the property once or twice himself: after he declined bidding any more, it was struck off to Darrah for a little over eighty dollars. When all these facts are considered, instead of being a proof of fraud, it ceases to be a matter of surprize that so small a sum was realized from the sale.

It was also urged by the complainant's counsel, that the sale was fraudulent as to the mortgage creditor, because the goods and chattels of the defendant in the execution were not first sold,

July, 1830.

Ex'r of Simmons
v.
Vandegrift
et al.

and applied to the payment of the execution. If the lands were sold before the goods, it was irregular, unless there was a written request to that effect given by the defendant; and of this the evidence is not satisfactory. But such irregularity cannot affect the sheriff's deed, unless the purchaser had notice of it; which in this case is neither alleged or proved. *Den* v. *Lecony, Cox N. J. R.* 39; and in *Deforest* v. *Lute,* 16 *John. R.* 127; it was held by the court, that a bona fide purchaser of lands at sheriff's sale has no concern with the fact, that the sheriff has omitted his duty in not first selling the goods and chattels.

There is one more point that requires to be noticed. The complainant alleges that the mortgage given by Vandegrift to Edsall, and by Edsall assigned to Simmons, was given for a part of the purchase money of the property on which it was a lien; and therefore that it is to be preferred, and the sale is void as against that mortgage. This appears to me altogether distinct and aside from the equity set up in the complainant's bill. It is no where alleged in the bill that the mortgage was given for the purchase money: nor is it claimed, that by reason of that fact, the mortgage is entitled to priority. The complainant put himself before the court, upon the broad ground, that the judgments were paid and satisfied; that this was known to the purchaser and sheriff; and that they effected the sale fraudulently, to injure the complainant's title. He should not depart too far, from the case which the defendants were called on to answer. Still, as no objection has been interposed by the defendants' counsel, in the argument, I shall raise no difficulty to a full investigation of the whole matter, especially as this part of the case was very strongly pressed.

The judgment under which Darrah, the purchaser, claims, was obtained in the term of February, 1816, in the common pleas of Sussex, by Smith and Loring, against Richard Edsall, junior, Richard Edsall, and John Vandegrift. Execution issued, returnable to May term, 1816. In the same month of May, Vandegrift mortgaged to Edsall the property in dispute. It appears by the testimony of Joseph Edsall, that Richard Edsall conveyed the property to Vandegrift; and that the making of the deed from Edsall to Vandegrift, and of the mortgage from Vandegrift to Edsall, were simultaneous acts; and that the mortgage was to secure part of the purchase money. The property was levied on

as the property of Vandegrift; from which circumstance, it is reasonable to suppose, the levy was not made until after the sale and conveyance from Edsall to Vandegrift. Admitting it then to be true, in the fullest extent, as contended for, that according to the common law, independent of and prior to our statute on the subject, the purchase money was a lien on the property sold, to the exclusion of any incumbrances against the purchaser; how can the present case possibly be affected by it? Edsall the vendor was a co-defendant with Vandegrift the purchaser. The property was bound by the judgment, in the hands of Edsall, before the sale, as well as in the hands of Vandegrift after the sale. The sale did not affect the judgment lien. The mortgage could not impair the rights of third persons. If Edsall had not sold the property, he could not, by the confession of a judgment, the execution of a mortgage, or in any other way, have divested it of the judgment lien. Nor can it be affected by a sale. It would be strange indeed, if a debtor, by a simple conveyance of his real estate, and taking a mortgage for the consideration money, should be able to gain a priority over a prior bona fide judgment creditor, and utterly destroy his lien.

But it is said that the sheriff levied on it as the property of Vandegrift: that this must have been after the sale, and consequently, after the mortgage: that Darrah only purchased the right of Vandegrift, and that right was subject to the mortgage. This is certainly true; and it is equally true, that both were subject to the prior judgment. The argument is, that at the time of the judgment, Vandegrift was not seized of this property: he had no right in it: the right was in Edsall; and that the right which Vandegrift acquired, was a right subject to the mortgage for the purchase money: that this right was all the sheriff could sell under his levy, and all that Darrah could purchase. The argument is plausible, but the conclusion is unsound and full of injustice. If the lot had been levied on before the sale from Edsall to Vandegrift, and as the property of Edsall, and been sold by the sheriff afterwards, as Edsall's property, there could have been no room for doubt. This might have been done: and even after the conveyance of the property from Edsall to Vandegrift, the sheriff might have levied on it as Edsall's property, and probably in strictness ought to have done so. But this was not done. Can

Edsall, or those claiming under him, now come into this court, and upon the common law doctrine of lien, actually supersede the incumbrance that was on the property before the supposed lien could have existed ? Would it be equitable ? Would it be just ? If Edsall had not been a co-defendant in the original judgment, a different case would have been presented; and the question might then have been raised, how far the mortgage, being for the purchase money, was to be protected against an anterior judgment outstanding against the purchaser. But that question cannot arise here.

Upon the whole matter, I am of opinion that the complainant has no claim against the defendants. Let the bill be dismissed.